IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANK GUILLEN-GONZALEZ,

    **Plaintiff**,

        **v.**                  **CIVIL NO**. 08-2407 (FAB)

JC PENNEY CORP., INC., JC PENNEY
PUERTO RICO, INC., AND/OR JC
PENNEY COMPANY OF PUERTO RICO,
INC.,

    **Defendant.**

## OPINION & ORDER

BESOSA, District Judge

    Pending before the Court is defendant's motion for summary judgment.  (Docket No. 21.)  Having considered the arguments contained in defendant's motion and plaintiff's opposition, the Court **GRANTS** the motion for summary judgment.

### PROCEDURAL BACKGROUND

    On December 12, 2008, plaintiff Frank Guillen-Gonzalez ("Guillen") filed a complaint alleging that defendant JC Penney Puerto Rico, Inc. ("JC Penney") discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and a Commonwealth discrimination statute known as "Law 100", P.R. Laws Ann. tit 29, § 146.  Guillen also claims that JC Penney retaliated against him

in violation of the retaliation clause of the ADEA and in violation of a Commonwealth retaliation statute known as "Law 115", P.R. Laws Ann. tit. 29, § 194a.  Guillen alleges that JC Penney failed to promote him, but instead filled the positions he sought with younger employees whom Guillen alleges were less experienced than he.  (Docket No. 1 at 3-4.)  Guillen also claims that JC Penney demoted him and substituted him with "substantially younger employees."  Id. at 4.  Guillen also alleges JC Penney failed to promote him and demoted him because of his age, and because he filed a charge of discrimination against JC Penney.  He claims he suffered from severe emotional injuries and that he lost past and future wages and benefits as a result of JC Penney's actions against him.

JC Penney argues that Guillen's claims should all be dismissed.  According to JC Penney, Guillen's discrimination claims are either time-barred or fail to establish *prima facie* cases of disparate treatment or retaliation.

## LOCAL RULE 56

Local Rule 56(c) requires a non-moving party to file with its opposition "a separate, short, and concise statement of material facts" which shall "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of

material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule." Local Rule 56(c) also requires that, if the nonmoving party includes any additional facts, such facts must be in a separate section, set forth in separate numbered paragraphs, and be supported by a record citation.  As a general principle, parties may not include legal arguments or conclusions in their statement of facts.  See MVM Inc. v. Rodriguez, 568 F.Supp.2d 158, 163 (D.P.R. 2008); Juarbe-Velez v. Soto-Santiago, 558 F.Supp.2d 187, 192 (D.P.R. 2008).

The First Circuit Court of Appeals has "repeatedly . . . emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Caban Hernandez v. Phillip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007).  Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is – and what is not – genuinely controverted.'" Id. (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)).  Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Id.  Where a party does not act in compliance with Local Rule 56, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated."

Civil No. 08-2407 (FAB)                                                    4

Id. (citing Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004)).

Guillen has largely failed to comply with the requirements of Local Rule 56(c). Instead of supporting his denials of JC Penney's assertions with specific record citations as required by Local Rule 56, Guillen's counter-statement contains paragraphical responses to JC Penney's alleged facts that are *identical*, demonstrating that Guillen's counsel uses and repeats the same language, verbatim, over and over, rather than creating arguments tailored to each alleged fact Guillen wishes to qualify or deny. The repeated arguments fail to cite to anything on the record supporting the given denials or qualifications of disputed facts. Of course, this failure to cite properly to supporting materials is to be expected when the exact same denials and qualifications, citing to the exact same materials on the record, are used to refute the *diversity* of facts alleged by JC Penney.

As to JC Penney's assertion that Guillen's supporting materials are not admissible, the Court reminds *both* parties that it will not rely on facts supported by documents that are not authenticated either by supporting affidavit or by virtue of their being self-authenticating documents prepared in the normal course of business. JC Penney is not immune from this admonition; in

certain instances it fails to identify properly key exhibits
purporting to support its statement of uncontested facts.  The
Court will also not rely on Guillen's own discrimination charge as
evidence.  Guillen asks the Court to consider the documentation of
his administrative charges of discrimination as evidence supporting
those very same claims brought to this Court.  Such a request is
like John Doe supporting his claim of innocence by referencing his
claim of innocence in another forum.

## FACTUAL BACKGROUND

What follows is a brief factual background composed of
relevant uncontested facts meant to provide context for the Court's
legal analysis.  The Court may introduce further factual
information or discuss submitted exhibits as necessary in the
course of examining the contested claims.

JC Penney is the owner and operator of all JC Penney stores in
Puerto Rico, including the store located a Plaza Las Americas
("Plaza") where Guillen was still employed at the time the
pleadings before the Court were filed.  (Docket No. 21-27 at 1.)

Guillen was born on March 14, 1961.  (Docket No. 21-1 at 2.)
JC Penney hired Guillen as a Customer Service Associate at its
Plaza store on February 21, 1988.  (Docket Nos. 21-5; 21-25 at 9;
21-27 at 1-2.)  It appears from a document summarizing Guillen's

status within the company that his rate of payment was changed on
April 9, 2000, as a result of a promotion to a Basic Logic
Associate[1] and that he received numerous pay rate changes
throughout his tenure as a result of "merit."[2]  (See Docket No. 21-
4 at 3.)

On October 24, 2004, JC Penney reclassified Guillen's job
position from a BLA to a Pricing Associate.  (Docket No. 21-3
at 2.)  JC Penney eliminated the BLA position altogether in October
of 2004, such that all persons holding the BLA position were
affected.  (Docket Nos. 21-25 at 14; 21-26 at 16.)  On October 24,
2004, JC Penney eliminated the BLA position and reclassified

---

[1] The position is referenced both as Basic Logic Assistant and
Basic Logic Associate in the pleadings.  The Court refers
henceforth to the position as "BLA."

[2] Guillen claims his only promotions were on June 24, 1991,
when he was promoted to the position of Department Supervisor and
on May 7, 1998, when he was assigned to the BLA position.  (Docket
No. 32-1 at 2.)  His claim is based only on his own declaration
under penalty of perjury, (Docket No. 32-2), which he made on April
6, 2010, *after* the defendant's March 1, 2010, filing of its motion
for summary judgment.  Although Guillen's declaration does not fall
squarely within the "sham affidavit" doctrine (see Colantuoni v.
Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994)
(citing Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th
Cir. 1993); Trans-Orient Marine v. Star Trading & Marine, 925 F.2d
566, 572-73 (2d Cir. 1991); Davidson & Jones Dev. v. Elmore Dev.,
921 F.2d 1343, 1352 (6th Cir. 1991)), because it does not include
new information contradicting previous testimony for the sole
purpose of creating a material issue of fact, the Court does note
that any declaration created after the filing of a motion for
summary judgment is inherently suspect.

Guillen from a BLA to a Pricing Associate as the result of its implementation of a new "Demand Chain Management System" (hereinafter "system").[3] (Docket Nos. 21-27 at 2; 21-26 at 16.) According to Guillen, there were six persons holding the BLA position at the time of his reclassification. (Docket No. 21-25 at 26.) The BLA position was eliminated, and replaced by a new position called Inventory Maintenance Associate ("IMA"). (Docket No. 21-26 at 16.)

As stated by Guillen in his testimony, JC Penney gave the persons holding BLA positions two choices: either be reclassified to a different position other than the BLA position, or receive a severance package following termination with the company. (Docket No. 21-25 at 24.) Guillen also stated in his testimony that the order of seniority with the company would determine the positions

---

[3] Defendant presents exhibit 10 (Docket No. 27-1) to support numerous alleged uncontested facts related to the Demand Chain Management System's implementation. The Court will not rely on facts supported solely by this exhibit, however, because defendant failed to identify the document, its author, or the date of its production. Most importantly, defendant has not authenticated this document, which the Court does not believe is a self-authenticating document because it clearly refers to an event - downsizing - not normally within the course of JC Penney's business. The Court includes in the record JC Penney's decision to eliminate the BLA position as a result of a restructuring, however, as other cited documents provide support for the same fact. (See, e.g., Docket No. 21-27.)

offered to former BLA employees.  Id. at 24-25.  Two of the six
BLAs had more seniority than Guillen:  employees Maria Medina and
Elizabeth Valles.  (Id. at 25.)  Both were reclassified from BLA to
IMA positions.  (Docket Nos. 21-13; 21-15.)  According to Guillen,
Elizabeth Valles was over the age of forty when she was
reclassified, and Maria Medina was "more or less" older than him at
that time.  (Docket No. 21-25 at 21.)  Another BLA, Blanca Vega,
who was hired before Guillen, and was older than Guillen, would
have also been reclassified as an IMA but, due to her illness with
cancer, she did not return to work at JC Penney.  (Docket Nos. 21-
12; 21-26 at 20-22.)  Carmen Diaz, another BLA who was younger than
Guillen, was reclassified to a much lower position than an IMA
after the system was implemented.  (Docket No. 21-26 at 22.)

        JC Penney offered Guillen the following options for
reclassification following the elimination of the BLA position
Guillen held:  a department supervisor position at either the
Hatillo or Caguas stores; a position with less responsibility at
the Plaza store; or the severance package upon termination.
(Docket No. 21-27 at 2.)  JC Penney claims no other IMA positions
were available (Id.); Guillen claims he was told there would be
three IMA positions (Docket No. 21-25 at 22), and that he was not
offered a position in Caguas, only in Hatillo.  (Docket No. 32-2

at 1.)   According to JC Penney, Guillen declined the department supervisor position at Hatillo or Caguas because of the rotating schedule requiring evening work and some weekends, as well as opening and closing the store.  (Docket No. 21-27 at 2.)  Guillen testified that he declined the position in Hatillo because it was "too far" from his home, not because of the work schedule it required.  (Docket No. 32-2 at 1.)  Regardless, Guillen continued working at the Plaza location as a Pricing Associate, which was a position with less responsibility and pay than that of the BLA position he held previously.  (Docket Nos. 21-26 at 26; 21-27 at 2.)  Guillen claims that the Plaza store manager, Daniel Ciccotelli, promised Guillen that Guillen would be given the first available supervisor position in the future.  (Docket No. 32-2 at 1.)

In his deposition, Guillen testified that all of the BLAs were treated "badly" in that all those holding the BLA positions prior to the reclassification had their pay and hours reduced as a result of the reclassification.  (Docket Nos. 21-25 at 22-23; 21-26 at 21.)  Of all the persons holding BLAs who were reclassified at the Plaza store, Guillen's pay cut was the second smallest; the two associates who were reclassified to IMA positions, received a $2.15 reduction in their hourly rate compared to Guillen's $1.37

reduction.    (Docket  No.  21-14;  21-15;  21-2.)    All  those

reclassified  from  the  BLA  positions  saw  their  salaries  reduced  to

a  maximum  of  $8.80  per  hour.   (Docket Nos. 21-27 at 23-24; 21-2;

21-13; 21-14.)

Prior  to  the  October  24,  2004,  job  reclassification,  Guillen

had  been  receiving  numerous  pay  raises  and  promotions,  including

during  the  time  after  he  turned  forty-years  old:   a  raise  on

April  4,  1998;  a  promotion  on  April  9,  2000;  a  raise  on  April  8,

2001;  a  raise  on  April  7,  2002;  a  raise  on  April  6,  2003;  and  a

raise  on  April  4,  2004.    (Docket  No.  21-2.)   As  a  Pricing

Associate,  after  the  2004  reclassification,  Guillen  was  compensated

at the maximum rate for the position he held at that time: $8.80.[4]

(Docket No. 21-26 at 22.)   After Guillen became an IMA, he

continued to receive pay raises, both in 2006 and 2007.   Id. at 23.

On October 6, 2005, Guillen filled a charge claiming

discrimination on the basis of age with the local

Antidiscrimination Unit ("ADU"). (Docket No. 21-1.) Guillen filed

a second charge with the ADU claiming age discrimination and

retaliation on September 25, 2007. (Docket No. 21-4.) There is no

evidence on the record, however, that Guillen ever filed any

internal charge of discrimination or any took advantage of any

other internal procedure for complaints or grievance that JC Penney

----

[4] In his deposition testimony, Guillen states that he received
the maximum payment, $8.80, for the position he held during the two
yeas after he was reclassified from the BLA position.  (Docket
No. 21-26 at 23.)  Guillen attempts to refute defendant's alleged
fact - that Guillen received the maximum payment rate of $8.80 as
a Pricing Associate - by citing to his declaration submitted after
the defendant filed the summary judgment motion, in which he claims
he did not reach the maximum pay for each position he occupied with
the defendant.  (Docket No. 32-2 at 1.)  While it may be true that
Guillen did not reach the maximum pay rate for each and every
position he ever occupied at JC Penney, his attempt to refute his
previous testimony admitting he received the highest pay rate as a
Pricing Associate with a declaration submitted after the summary
judgment motion and which contradicts that previous testimony is,
quite simply, incredible.  See Colantuoni v. Alfred Calcagni &
Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested
witness has given clear answers to unambiguous questions, he cannot
create a conflict and resist summary judgment with an affidavit
that is clearly contradictory, but does not give a satisfactory
explanation of why the testimony is changed.")

makes available to its employees.  (See Docket Nos. 21-19, 21-20,
21-22, 21-23, 21-26 at 3.)  Guillen stated in his testimony that he
never heard anyone at JC Penney's say anything negative about
Guillen's age, or anything indicating he was not promoted due to
his age.  (See, e.g., Docket No. 21-26 at 38-39.)

       Guillen did not identify during his deposition any specific
supervisory position for which he applied.  (Docket No. 21-26
at 35-37.)  Guillen did not identify any specific instance in which
he was not promoted after the filing of the discrimination charges
or this lawsuit.  Id. at 28.  Guillen claims that Ciccoteli
promised Guillen that Guillen would be considered for future
supervisory positions.  (Docket No. 21-25 at 28-28.)  Guillen says
he also requested consideration for supervisory positions from Juan
Leal, the store manager, and Leyla De Jesus, the assistant store
manager.  (Docket No. 32-2 at 2.)  During his deposition, Guillen
explained that he never applied after the October, 2004
reclassification for any supervisory positions in written form,
only by verbal request to Ciccotelli, expressing a general desire
to be considered for any supervisory position.  Id. at 35-37;
Docket No. 32-2 at 2.  Years earlier, however, in 1997, Guillen
applied for a manager position at JC Penney by sending a formal
letter of request to be interviewed.  (Docket No. 21-6.)  Guillen

Civil No. 08-2407 (FAB)                                          13

claims, however, that his manner of application for supervisory
positions from Ciccotelli and others following the 2004
reclassification "was the way it was commonly and normally used
[sic] by every employee at the defendant [sic] to apply to any
position in the defendant [sic] since the openings were not
posted," and that "[t]he employee just expressed his desire to
occupy a supervisory position and he was considered for it, if it
became available." Id. at 1-2.   Ciccoteli left his position as
general manager of the Plaza store in early 2005. (Docket No. 21-
26 at 27; Docket No. 21-26 at 35-37.)

        In late 2006, or early 2007, Guillen applied for a posted
supervisory position in the JC Penney's Plaza Carolina location.
(Docket Nos. 21-26 at 3-5; 21-27 at 3.)   John Derek Orr interviewed
Guillen for the Merchandise Assistant position, Guillen withdrew
himself from consideration, however, when he found out that the
position entailed a 32-hour work week, and was not a Buyer's
Assistant position.   (Docket No. 21-27 at 3; Docket No. 32-1
at 31.)   The Merchandise Assistant position demanded a fixed
schedule and would not normally require Guillen to work on
weekends.   Id.   Guillen claims that he applied for and declined
only two positions:  Management Trainee and Merchandise Assistant.
(See Docket No. 32-1 at 31.)

Guillen's reclassification from a BLA to a Pricing Associate was conducted on October 24, 2004, he was only a Pricing Associate until July 30, 2006, when he was again reclassified to the IMA position. (Docket No. 21-3.) On March 2, 2008, Guillen was again reclassified to "jcp.com/Catalog Supervisor," because the IMA position at the Plaza location was eliminated. (Docket No. 21-27 at 4.) He did not apply for this new position in writing. (See Docket No. 32-1 at 37.) At that time, Guillen was again informed of his options, and he made the decision to accept the catalog supervisor position. Id. Guillen claims he was given that position "not because elimination [sic] of the IMA position, but due to my complaints and after my complaints." (Docket No. 32-2 at 2.) He claims the only option he was offered was the position of salesperson. Id. Guillen's reclassification to catalog supervisor position resulted in Guillen receiving a raise in his pay rate. (Docket No. 21-27 at 4.) Guillen has continued working in the position of catalog supervisor making the highest salary he has ever made during his tenure at JC Penney. Id.

Guillen stated in his declaration that three employees with less experience than he were promoted to supervisor positions after

October 2004.[5]  (Docket No. 32-2 at 2.)  He claims that at the time those employees were promoted, they were younger than he.  (See Docket Nos. 32-1 at 37; 32-4 at 2.)  Guillen claims he was willing to work a rotating schedule, evenings, and to open and close the store, and that he told this to his manager.  (Docket No. 32-2.)

## ANALYSIS AND DISCUSSION

### I.   Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  The rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party moving for summary judgment bears the burden of showing

---

[5] Guillen provides no evidence other than the dates of these employees births to support his claims.  He does not provide the dates of their promotions, their resumes, the locations and schedules of the positions for which they were hired, or any other information necessary to confirm that his allegations about their hiring are relevant to his claims of age discrimination.

the absence of a genuine issue of material fact.  See Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the

opposing party has the burden of demonstrating that a trial-worthy

issue exists that would warrant the Court's denial of the motion

for summary judgment.  For issues where the opposing party bears

the ultimate burden of proof, that party cannot merely rely on the

absence of competent evidence, but must affirmatively point to

specific facts that demonstrate the existence of an authentic

dispute.  See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49, 53 (1st

Cir. 2000).

In order for a factual controversy to prevent summary

judgment, the contested facts must be "material" and the dispute

must be "genuine."  Material means that a contested fact has the

potential to change the outcome of the suit under governing law.

The issue is genuine when a reasonable jury could return a verdict

for the nonmoving party based on the evidence.  See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled

that "[t]he mere existence of a scintilla of evidence" is

insufficient to defeat a properly supported motion for summary

judgment.  Id. at 252.  It is therefore necessary that "a party

opposing summary judgment must present definite, competent evidence

to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23
F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the Court "must view the entire
record in the light most hospitable to the party opposing summary
judgment, indulging in all reasonable inferences in that party's
favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).
The court may safely ignore, however, "conclusory allegations,
improbable inferences, and unsupported speculation." Medina-Munoz
v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**II.  Age Discrimination in Employment Act ("ADEA")**

    **A.    Timeliness of Guillen's Age Discrimination Claims**

        Demotion Claim

JC Penney first asserts that Guillen's age discrimination
claim for demotion is untimely because he failed to file his charge
within the period allotted by law.  "In states which have enacted
employment discrimination laws like Puerto Rico ("deferral
states"), plaintiffs must file charges of unlawful . . .
discrimination [based on a protected category] within 300-days
after the alleged unlawful employment practice occurred."
Portugues-Santa v. B. Fernandez Hermanos, Inc., 614 F.Supp.2d 221,
232-33 (D.P.R. 2009) (citing 42 U.S.C. § 2000e-5(e)(1); Fontanez-
Nuñez v. Janssen Ortho. LLC., 447 F.3d 50, 55 (1st Cir. 2006);

Civil No. 08-2407 (FAB)                                              18

American Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 122

(1st Cir. 1998); Lawton v. State Mut. Life Assurance Co. of

America, 101 F.3d 218, 221 (1st Cir. 1996); Cardona v. Aramark

Services of Puerto Rico, Inc., 9 F.Supp.2d 92, 97-98 (D.P.R.

1998)).

        JC Penney reclassified Guillen on October 24, 2004.  More

than 300 days elapsed before October 6, 2005, when Guillen filed a

charge based on his reclassification.   JC Penney points out that

"plaintiff's counsel admitted the same" to the Court in the

scheduling conference.  (Docket No. 21 at 5.)  Moreover, Guillen

himself states in his opposition brief that his ADEA discrimination

and retaliation claims in this case relate to the failure to

promote Guillen since October 2004 up to and including failures to

promote through 2008.   (Docket No. 33 at 6-7.)   According to

Guillen's  opposition  brief,  "the  facts  related  to  the

reclassification (demotion) of October 24, 2004, are brought in the

complaint as a background for the subsequent discriminatory and

retaliatory actions . . ."   Id.   The Court finds Guillen's

statements untruthful.  In his complaint, Guillen clearly states

that his age discrimination claim is based on his demotion "even

though he was performing his job at a level that met [JC Penney's]

expectation."  (Docket No. 1 at 4.)  Regardless, however, of

Guillen's labored attempted to separate himself from that initial untimely allegation, claiming belatedly that those allegations were background information, and not allegations at all, the Court notes here for the record that Guillen's claims based on his reclassification are time-barred and therefore **DISMISSED WITH PREJUDICE.**

<u>Failure to Promote Claim(s)</u>

JC Penney has not moved the Court to consider the timeliness of Guillen's remaining age discrimination claim or claims based on JC Penney's alleged failures to promote Guillen. The Court will nevertheless address their timeliness in brief, although its decision to dismiss Guillen's failure to promote claims is based on their lack of merit, as discussed below.

A defendant's failure to promote is considered a discrete act constituting "a separate actionable 'unlawful employment practice,'" <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002), for which a plaintiff must have filed administrative charges within 300 days of its occurrence. As this Court has said before, in reference to the timeliness of employment discrimination claims, "To determine the timeliness of a complaint, the date of challenged employment practice or action must be identified."

Civil No. 08-2407 (FAB)                                           20

Portugues-Santa v. B. Fernandez Hermanos, Inc., 614 F.Supp.2d 221,

233 (D.P.R. 2009).

          The Court observes that Guillen's second ADU charge,

filed on September 25, 2007, does not specify the dates of the

adverse actions alleged, but states that Guillen requested "on

several occasions that he be promoted to supervisory positions,

which has [sic] been denied" on the basis of his age and in

retaliation for his earlier ADU charge.   (Docket No. 21-4.)

Although it is possible that the language in Guillen's ADU charge

might be found to constitute an ongoing violation charge, something

Guillen, himself, does not argue explicitly in regard to

timeliness, "discrete discriminatory acts are not actionable if

time barred, even when they are related to acts alleged in timely

filed charges." National Railroad Passenger Corporation v. Morgan,

536 U.S. 101, 113 (2002).   Because Guillen references no specific

dates on which he was denied a promotion, determining timeliness is

difficult.   While this discussion is primarily academic, given the

Court's findings on the merits below, it is worth noting that

Guillen's failure to promote claim may also be time-barred.

     **B.    ADEA Age Discrimination Claims for Failure to Promote**

          Pursuant to the ADEA an employer may not discharge or

"otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of his age."  29 U.S.C. § 623(a)(1).  An employee claiming that his employment was terminated in violation of the ADEA "must shoulder the ultimate 'burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age.'"  Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008) (quoting Davila v. Corporacion de Puerto Rico para la Difusion Publica, 498 F.3d 9, 15 (1st Cir. 2007) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991) (additional citation omitted))).  "As the Supreme Court recently clarified, plaintiffs must establish that age was the 'but-for' cause of the employer's adverse action."  Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 446 (1st Cir. 2009) (citing Gross v. FBL Fin. Servs., Inc., --- U.S. ----, 129 S.Ct. 2343, 2351 (2009) (internal quotations omitted)).

        In the absence of direct evidence, as is the situation in this case, an employee may utilize a burden shifting framework to prove discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see also Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (applying the McDonnell Douglas framework in an ADEA case).  The initial burden lies with the plaintiff to establish a *prima facie* case of discrimination.

Davila, 498 F.3d at 15.  To satisfy this burden when the claim is based on a failure to promote, the plaintiff must adduce evidence in support of the following four facts:  "(1) [he] is a member of a protected class, (2) [he] was qualified for an open position for which [he] applied, (3) [he] was rejected, and (4) someone possessing similar qualifications filled the position instead." Ingram v. Brink's., Inc., 414 F.3d 222, 230 (1st Cir. 2005) (citing Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004).  The required *prima facie* showing is not especially burdensome.  See id; Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995); Sanchez v. P.R. Oil Co., 37 F.3d 712, 719 (1st Cir. 1994), Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 n. 4 (1st Cir. 1994).

        Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant-employer "to articulate a legitimate, nondiscriminatory basis for its adverse employment action."  Torrech-Hernandez, 519 F.3d at 48.  To be clear, this is not a burden of persuasion.  Davila, 498 F.3d at 16. "[T]he employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive."  Id.

        Once the employer satisfies its burden of production, the presumption attending the *prima facie* case vanishes and the burden

shifts back to the employee who must then show by a preponderance
of the evidence that the reason given by the employer for the
discharge is merely a pretext and that the real motivation for the
adverse job action was age discrimination.  Velazquez-Fernandez,
476 F.3d at 11; Gonzalez, 304 F.3d at 69.  "In other words, the
bottom-line question of discrimination *vel non* comes front and
center.  At summary judgment, this question reduces to whether or
not the plaintiff has adduced minimally sufficient evidence to
permit a reasonable factfinder to conclude that he was fired
because of his age."  Davila, 498 F.3d at 16 (citations omitted).

       JC Penney does not dispute that Guillen was in the
protected class or that he was qualified for positions he may have
sought; instead, JC Penney argues that Guillen has failed to
establish the third and fourth prongs of his discrimination claims
because Guillen never established that he was rejected from any
open positions to which he applied or that someone possessing
similar qualifications filled the positions instead.

       Although demotions and failures to promote may be
considered adverse actions in employment discrimination cases (see
DeNovellis v. Shalala, 135 F.3d 58, 75 (1st Cir. 1998)(citing Wyatt
v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994), "[d]etermining
whether an action is materially adverse necessarily requires a

case-by-case inquiry." Blackie v. State of Me., 75 F.3d 716, 725

(1st Cir. 1996) (citing Welsh v. Derwinski, 14 F.3d 85, 86 (1st

Cir. 1994)). The First Circuit Court of Appeals has noted that

"[w]ork places are rarely idyllic retreats, and the mere fact that

an employee is displeased by an employer's act or omission does not

elevate that act or omission to the level of a materially adverse

employment action" and that, "[t]ypically, the employer must either

(1) take something of consequence from the employee, say, by

discharging or demoting [him], reducing [his] salary, or divesting

[him] of significant responsibilities . . . or (2) withhold from

the employee an accouterment of the employment relationship, say,

by failing to follow a customary practice of considering [him] for

promotion after a particular period of service." Blackie, 75 F.3d

725-26 (internal citations omitted).

        Guillen has adduced no verifiable evidence to support his

claim that JC Penney failed to promote him or that the promotions

he sought were filled by someone with comparable skills. Although

Guillen never makes clear which specific position he sought and was

denied, he argues that he "was promised that the first supervisory

position that emerged was going to be given to him" and that this

promise was broken (Docket No. 33 at 10). Guillen also argues that

he applied generally to all supervisory positions that emerged

Civil No. 08-2407 (FAB)                                                    25

after October 2004 in the Plaza store by informing various managers
of his interest in obtaining such a position, and that "Guillen saw
that the supervisory positions that were supposed to be given to
him were being given to younger employees." Id.

        Neither the record, nor the case law, support Guillen's
failure-to-promote claims.  Although Guillen provides no date for
the alleged promise made to him that the first available
supervisory position would be his, the record does show that JC
Penney offered Guillen various supervisory positions following his
October 2004 reclassification.  First, at the time of the
reclassification itself, JC Penney offered Guillen a department
supervisor position at either the Hatillo or Caguas store.  The
record also shows that JC Penney promoted Guillen from Pricing
Associate to IMA on July 30, 2006, and that after Guillen became an
IMA, he received pay raises, both in 2006 and 2007.  Further, in
late 2006, or early 2007, Guillen applied for a posted supervisory
position in the JC Penney's Plaza Carolina location, but withdrew
himself from consideration when he found out that the position
entailed a 32-hour work week, and was not a Buyer's Assistant
position.  Guillen was again promoted in March 2008 to Catalog
Supervisor.  The record contains substantial evidence that JC
Penney promoted Guillen and gave him pay raises throughout his

career at JC Penney; there is no evidence on the record showing that JC Penney ever denied him a particular promotion he sought.

Significantly, Guillen cites no case law which would support the establishment of a *prima facie* failure-to-promote claim based on a generalized request for promotions.  To the contrary, a plaintiff claiming a failure-to-promote must show that he "applied for a specific position or positions . . . rather than merely asserting that on several occasions she or he generally requested promotion."  <u>Velez</u> 467 F.3d at 807 (citing, *inter alia*, <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 711-12 (2d Cir. 1998)).  As the First Circuit Court of Appeals put it, "[t]his specificity requirement is sensible and fair.  An open-ended request for employment should not put a burden on an employer to review an applicant's generally stated credentials any time a position becomes available . . ."  <u>Id</u>. at 808.  The Court of Appeals went on to explain that, "If we were to find such a general request the legal equivalent of an application, we would require employers to answer for their failure to hire individuals who did nothing more than express a desire to be employed."  <u>Id</u>.

Finally, Guillen alleges that JC Penney gave supervisory positions that became available after October, 2004, to employees younger and less experienced than he.  Guillen names two employees

specifically whom he claims received supervisory positions despite being less qualified and younger than he; he does not produce any evidence, however, regarding the promotions or positions they were allegedly given in lieu of him, the dates of those promotions or hires, or anything else that would give any substantive proof to Guillen's claims.  Guillen therefore fails to establish the fourth prong necessary to establish a *prima facie* failure-to-promote claim.

For all these reasons, the Court finds that Guillen failed to make a *prima facie* showing of age discrimination.  Even had Guillen made such a showing, however, he also fails to refute the grounds given by JC Penney for its contested hiring decisions by showing those grounds to be pretext by a preponderance of the evidence, and he fails to adduce any evidence whatsoever to show that "but for" his age he would have been promoted to a particular supervisory position.  The record shows that JC Penney eliminated the BLA position on October 24, 2004 due to a restructuring; all employees holding the BLA position were affected, not just Guillen. JC Penney counters Guillen's vague assertions that he was denied promotions on the basis of his age with a nondiscriminatory reason that is amply supported in the record; the jobs offered to the reclassified employees were offered on the basis of seniority.

Civil No. 08-2407 (FAB)                                              28

Furthermore, the record shows that the two employees who were reclassified from the BLA position and then given the IMA position in the Plaza location that Guillen presumably preferred were both his age or older.[6]  JC Penney also points to evidence showing that it was Guillen himself who withdrew from the application process for at least one supervisory position available.

     Although it is possible to show pretext "by showing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons,'" there is not sufficient evidence in this case for a reasonable factfinder to "'infer that the employer did not act for the asserted non-discriminatory reasons.'"  See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000) (quoting Hodgens v. General Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998)).  JC Penney has countered Guillen's claims that JC Penney failed to promote him on account of his age with nondiscriminatory reasons for each recognizable failure to promote

_____

     [6] The Court notes that the First Circuit Court of Appeals does not even require this showing to satisfy the fourth prong of a failure to promote claim.  See, e.g., Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 155 (1st Cir. 1990) (stating that "we have never held that the . . . prima facie discharge case can be fulfilled only if the complainant shows that she was replaced by someone outside the protected group").

when an open supervisory position became available that draws clear support from the record in the present case.  Guillen, on the other hand, has provided no evidence which could allow a reasonable factfinder to conclude that JC Penney's reasons for failing to promote him (and the Court notes that JC Penney eventually *did* promote Guillen) is pretext for age discrimination.  Thus, Guillen has failed to establish genuine issues of material fact sufficient to send his age discrimination claim to a jury.  The remaining age discrimination claims for failure-to-promote are accordingly **DISMISSED WITH PREJUDICE.**

### C.    ADA Retaliation Claim

Both the ADEA and Title VII prohibit an employer from discriminating against an individual because he or she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under the ADEA or Title VII, respectively.  42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  To establish a *prima facie* case of retaliation under either statute, a plaintiff must show that he or she:  (1) engaged in protected conduct; (2) suffered an adverse employment action; and (3) that the adverse employment action was causally connected to the protected conduct.  Noviello, 398 F.3d at 88 (citing Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003); Ramirez Rodriguez v.

Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 84 (1st

Cir. 2005) (citing Mesnick, 950 F.2d at 827.  Once a plaintiff

satisfies the elements of the *prima facie* case of retaliation, a

burden of production falls on the employer to put forth a

legitimate, nondiscriminatory reason for the adverse employment

action.  Ramirez-Rodriguez, 425 F.3d at 84; Valentin-Almeyda, 447

F.3d at 95.  The ultimate burden of persuasion, however, remains

with the plaintiff, and he or she must show that the employer's

nondiscriminatory reason is a pretext for retaliatory

discrimination.  Id.

        Guillen satisfies the first prong; he filed two charges

of age discrimination with the ADU, both constituting protected

activity.  As the Court has already discussed, however, Guillen has

failed to show that he suffered an adverse action; the record is

clear that Guillen himself turned down JC Penney's offer for a

supervisory position at the time of his October 24, 2004,

reclassification because the position was located too far away,

that Guillen removed himself from consideration for other available

supervisory positions, and that Guillen in fact was given a

promotion to a supervisory position and received several pay raises

since his engagement in protected activities in October, 2005, and

September, 2007.

Even had Guillen shown himself to be the victim of an adverse action, there is absolutely nothing in the record to link the alleged failures to promote to any sort of discriminatory animus or to Guillen's ADU charges.  Guillen's only argument[7] is superficial, and is not grounded either by the record he produced or by any case law (Guillen cited no legal authority whatsoever to support his retaliation argument); he argues that "retaliation is the only justification for having promoted Zolymar Torres and Emilio Cuevas, instead of Guillen, because Guillen was the perfect employee for the positions."  (Docket No. 33 at 16.)  Again, the Court notes with incredulity that Guillen fails to adduce evidence showing the Court what positions these employees filled that Guillen was "perfect for," when they were given those positions, and what qualifications they lacked that Guillen possessed, or how their promotions would relate in any way at all to Guillen's

---

[7] Guillen does make one other argument related to his retaliation claim that "Defendant presents shifting explanations and explanations [sic] are full of weaknesses, implausibilities, inconsistences, incoherencies [sic], or contradictions." (Docket No. 33 at 17.)  Because Guillen makes this statement (a verbatim quote lifted but not credited to a holding in a First Circuit opinion) with no further explanation of what those weaknesses, implausibilities, etc., are, the Court does not consider the argument. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Civil No. 08-2407 (FAB)                                                    32

engagement in protected activities.  Guillen merely says, without
drawing on anything from the record, that Emilio Cuevas "did not
even know how to use a cash register" and that "Guillen was the
logical employee to fit for the position of supervisor that were
given to these employees." Id. at 17-18.

        The Court need not exert itself responding to a claim
that a plaintiff clearly put little time into researching or
supporting.  Accordingly, the Court need go no further here,
because Guillen has produced no evidence and raised no legal
support at all for his retaliation claim.  That retaliation claim
is, without further delay, **DISMISSED WITH PREJUDICE.**

**III. Supplemental Claims**

    Guillen alleges claims pursuant to Puerto Rico Law 100 and Law
115.  (Docket No. 1 at ¶ 5.)  Because no federal claims remain to
ground supplemental jurisdiction over the Commonwealth claims,
Guillen's claims pursuant to Law 100 and Law 115 are **DISMISSED
WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

                              **CONCLUSION**

    For the reasons expressed above, the Court **GRANTS** JC Penney's
motion for summary judgment.  Guillen's federal claims are all
**DISMISSED WITH PREJUDICE,** and his supplemental state claims are
**DISMISSED WITHOUT PREJUDICE.**

Civil No. 08-2407 (FAB)                                                    33

Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, August 16, 2010.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE